UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WENDY BARTLEY, )<br>)<br>     *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>     *Defendant* ) | Docket No. 07-89-B-W |

### *REPORT AND RECOMMENDED DECISION[1]*

This Supplemental Security Income ("SSI") appeal raises the questions of whether the administrative law judge properly weighed the opinion of a treating psychiatrist and the report of a consulting psychiatrist, erred in finding no medical evidence connecting her symptoms and a particular medication, and properly evaluated her credibility. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from a seizure disorder that was a severe impairment but which did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"),

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 19, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Finding 2, Record at 17; that the plaintiff's statements concerning her impairment and its impact on her ability to work were not entirely credible, Finding 5, *id*. at 18; that she lacked the residual functional capacity to climb ladders, ropes, or scaffolds, drive commercially, or work near hazards such as unprotected heights, moving machinery, and open water, Finding 6, *id*.; that, given her age (31), high school education and lack of past relevant work and the fact that her non-exertional impairments do not significantly erode the number of unskilled jobs that exist in significant numbers in the national economy, use of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Guidelines") as a framework for decision-making led to the conclusion that the plaintiff was not disabled as that term is defined in the Social Security Act at any time through the date of the decision, Findings 7-11, *id*.  The Appeals Council declined to review the decision, *id*. at 4-6, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional

capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The appeal also implicates Step 2 of the sequential process, at which stage the plaintiff bears the burden of proof. However, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

## Discussion

### A. Step 2 Issues

The plaintiff contends that the administrative law judge was required to accord controlling weight to an August 2003 psychiatric evaluation and ensuing treatment record of Can Bulucu, M.D., a psychiatrist, with respect to the severity of an alleged mental impairment, rather than "dismissively and incorrectly" characterizing the evaluation as a "one-time intake report." Statement of Specific Errors ("Itemized Statement") (Docket No. 8) at 5. She asserts that Dr. Bulucu diagnosed major depressive disorder and post-traumatic stress disorder, *id*. at 3, and later refers to depression and anxiety as apparently the specific impairments which she claims were severe, *id*. at 5. In this regard, she recites her own reports to Dr. Bulucu, *id.* at 6, "third party corroboration" from friends and relatives, *id*. at 8, and Dr. Bulucu's "objective" findings "that

her mood was depressed, her affect was constricted, and that she became tearful at times[,]" *id.* at 6.

The administrative law judge found that "[t]he claimant's depressive disorder is not a severe impairment where the claimant's activities of daily living are mildly limited; she suffers mild difficulties in her ability to maintain social functioning; and she suffers mild difficulties in her ability to maintain concentration, persistence or pace.  There is no evidence that she has had any episodes of decompensation." Finding 3, Record at 17-18.  A mental impairment generally is considered non-severe for purposes of Step 2 if the degree of limitation in three functional areas, activities of daily living, social functioning, and concentration, persistence, or pace, is "none" or "mild." 20 C.F.R. § 416.920a(d)(1).  The administrative law judge correctly applied this standard.

In order to be found severe at Step 2 of the sequential evaluation process, a mental impairment must significantly limit the claimant's ability to do basic work activities.  20 C.F.R. § 416.920(c).  "Basic work activities" that may be affected by a mental impairment include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b).  At Step 2, where the plaintiff bears the burden of proof, she may reasonably be expected to be able to apply 20 C.F.R. § 416.928 to identify symptoms ("your own description of your physical or mental impairment"), signs ("anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)"), and laboratory findings in a physician's report or records. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception.

4

They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 416.928(b).

The plaintiff's first shortcoming, then, is her failure to identify any psychiatric signs, other than a reference to her "subjective allegations of chronic fatigue . . . by far her most debilitating symptom." Itemized Statement at 8. Yet, she ties her alleged chronic fatigue to her use of prescription Depakote and her seizures as much, if not more, than to her alleged mental impairment. *Id.* at 8-11. In any event, the plaintiff does not cite any finding by Dr. Bulucu to the effect that she suffered from chronic fatigue that he observed apart from her statements, or that the chronic fatigue would necessarily and significantly limit her ability to perform basic work activities.

The plaintiff's next difficulty is that a treating physician's conclusions need not be given controlling weight unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial medical evidence in the record. 20 C.F.R. § 416.927(d)(2). As the plaintiff herself notes, Itemized Statement at 5 & 11-14, the record includes a psychologist consultant's evaluation of the plaintiff, a document which does constitute substantial medical evidence but is inconsistent with the conclusions that the plaintiff draws from Dr. Bulucu's records. The plaintiff argues at length that the consultant's report should be disregarded, including perceived inconsistencies between that report and the conclusions of the non-examining state-agency reviewing psychologist, *id.* at 13. However, the cited inconsistencies ultimately make no difference because the state-agency psychologist concluded expressly that, however the plaintiff's mental impairment might properly be characterized, it was non-severe. Record at 290. That conclusion is also inconsistent with the

gloss that the plaintiff seeks to place on Dr. Bulucu's evaluation after his initial meeting with her and his subsequent records of treatment.

The plaintiff contends that the administrative law judge offers "no legitimate explanation . . . as to why Dr. Bulucu's opinion is deemed unreliable[,]" Itemized Statement at 9; that the opinion fails to meet the obligation imposed by 20 C.F.R. § 216.927(d)(2) that it give good reasons for the weight given to Dr. Bulucu's opinion because it "rel[ies] upon rationale derived from clear factual error[,]" *id.* at 7, apparently the characterization of Dr. Bulucu's initial evaluation as a "one-time intake report by a supervising  psychiatrist[,]" *id.* at 6 (emphasis added by plaintiff); that "it is impossible to tell if the ALJ even noticed Dr. Bulucu's two years['] worth of treatment notes when he dismissed the evaluation[,]" *id.*; and that the opinion fails to address and resolve inconsistencies between the consultant examiner's opinion and that of Dr. Bulucu, in violation of 20 C.F.R. § 416.927(d)(2), *id.* at 12.

In the face of this multi-faceted attack, I recite the detailed sections of the administrative law judge's decision that refer to mental impairment:

> The claimant's depressive disorder is not a severe impairment. The claimant has sporadically participated in counseling for depression (Exhibits 7F, 10F). She was discharged from therapy in August 2002 due to frequent failure to keep appointments, and counseling notes from November 2003 and February 2004 indicate that poor attendance continued to be an issue. The claimant has also been prescribed antidepressants such as Zoloft, Effexor, and Lexapro (Exhibits 3F, 7F).
>
> The evidence fails to establish, however, that the claimant has a severe mental impairment. While treating source notes indicate that the claimant has occasional periods of increased anxiety and depression due to situational stress, the overall record does not document significant, ongoing functional difficulties caused by psychological disorders. The clinician who evaluated the claimant at Aroostook Mental Health Center in August 2002 estimated her global functioning level to be 63, which indicates a mild degree of functional compromise (Exhibit 7F). A psychological evaluation done in December 2003 indicates that the claimant reported she had normal adaptive living skills and no serious

6

difficulties tending to her own needs or those of her three children (Exhibit 2F). She also indicated that she had a network of friends and was able to meet and date men. She demonstrated good interaction skills and an alert, attentive demeanor. The psychologist estimated her global functioning level to be 72, which denotes only a slight degree of impairment and transient symptomology.

Using the prescribed technique for evaluation of the severity of mental impairments, the claimant's depression and anxiety mildly restrict her activities of daily living; cause mild difficulties in her ability to maintain social functioning; and result in mild difficulties in her ability to maintain concentration, persistence or pace. There is no evidence that she has had any episodes of decompensation.

\* \* \*

The claimant's functional activities of daily living tend to erode her credibility. (Exhibit 2F) She maintains an apartment, is the single parent of her three children, attends school functions, maintains her monies and her medications, shops, socializes at will on a near daily basis, including ". . . eligible men to date or befriend." She drives her daughter to school. (Testimony). She spends most of her days watching television. She performs these representative activities on an independent, sustained, effective and appropriate basis, markedly inconsistent with the dire description set forth in her testimony.

\* \* \*

The degree of the claimant's complaints [is] unsupported by objective observations. (Exhibits 4F, 6F, 8F, 9F). The examining DDS psychologist concluded the claimant demonstrated no fatigue, loss of concentration, inability to relate to others; rather, the claimant enjoyed an active social life, possessed normal adaptive skills, maintained normal understanding and memory, and demonstrated normal mental status. (Exhibit 2F). The physician who examined her in December 2003 concluded that she had the capacity to work full-time despite the claimant's complaints of daytime somnolence, poor nighttime sleep and anxiety. (Exhibit 3F).

\* \* \*

. . . The claimant responded well to individual counseling. (Exhibit 7F/May 9, 2002 through May 13, 2004; Exhibit 10F/May 17, 2004 through June 23, 2005). Typically, her treating social worker noted the claimant was "doing well", though there were occasional episodes of stress which exacerbated her symptoms. . . . Treating and examining doctors reported good mental status on physical examination, (Exhibits 14F, 10F, 7F), a more reliable pattern than the one-time intake report of a supervising psychiatrist. (Exhibit 7F-46). There were no in-patient hospitalizations.

\* \* \*

> . . . The clinician who interpreted the results of a personality inventory completed by the claimant in August 2002 suggested that the claimant may have intentionally exaggerated her problems (Exhibit 1F). Global assessment of functioning scores range from a low of 55 to a high of 72. (Exhibits 7F-48, 2F).
>
> * * *
>
> After considering the testimony and the evidence of record, the opinions of the DDS examiners are adopted because they set forth all the limitations which are accepted as true and are supported by the record. (Exhibits 8F, 9F).

Record at 14-17. Exhibit 7F includes Dr. Bulucu's evaluation and his notes. References to specific pages within that exhibit are to pages of his notes as well as the evaluation. These references effectively refute the plaintiff's suggestion that it is impossible to tell whether the administrative law judge noticed those notes.

It is also incorrect to characterize the administrative law judge's description of Dr. Bulucu's evaluation as "clear factual error." Itemized Statement at 7. From all that appears in the record, that 4-page document, entitled "Psychiatric Evaluation," was a "one-time intake report." The plaintiff does not identify any other intake report in the record, and the examination reported clearly was undertaken as part of the plaintiff's referral to the Aroostook Mental Health Clinic, and thus clearly an "intake" report. Dr. Bulucu's notes, interspersed in the record with notes from other providers at the facility, *e.g.*, Record at 200-05, 208-14, 216-18, 220-21, 223-25, 227-32, 234-35, 237-41, 243-44, 251-57, 259-60, 265-69, some of which are countersigned by Dr. Bulucu, certainly suggest that he was a "supervising psychiatrist" with respect to the patient's care at that facility.

Finally, I conclude that the administrative law judge's extensive discussion of the various records concerning the plaintiff's mental impairments cannot fairly be described as a less than "legitimate" explanation of the administrative law judge's reasons for rejecting Dr. Bulucu's evaluation and notes, to the extent that the notes and evaluation can even be accurately described

as being inconsistent with the report of the consulting examiner and the state-agency reviewer. The administrative law judge complied with applicable regulations requiring that he set forth his reasons for "adopting" the opinion of the consultant "over" the opinion of Dr. Bulucu, even assuming *arguendo* that the decision can be fairly described as doing so.

## B.  The effects of medication

The plaintiff describes the administrative law judge's statement that "[t]he claimant's testimony that Depakote has a significantly sedating effect upon her is not supported by treating doctor notes[,]" Record at 16, as "wholly unsupported by, and go[ing] against the weight of[,] the evidence in the record[,]" Itemized Statement at 9.  It is not entirely clear from her submission what she contends would change were this not the case, but she faults the administrative law judge for using this observation as one basis for "a negative credibility determination."  *Id*. at 11.  The challenged statement appears in a paragraph of the administrative law judge's decision that deals with the plaintiff's credibility.  Record at 16.

The plaintiff presents nine specific citations to the record that she apparently believes demonstrate that Dr. Bulucu "clearly stated his opinion that the plaintiff's Depakote is most likely causing her chronic fatigue."  *Id*. at 9.  Only two of these entries actually mention Depakote.  Record at 206, 304.  As for the others, the mere fact that Dr. Bulucu observed a tired appearance or affect cannot serve as evidence that Dr. Bulucu believed that Depakote specifically was causing the plaintiff's fatigue.  At the time of some of the cited notes, the plaintiff was apparently not even taking Depakote.  *E.g.*, *id*. at 215 (mentions only Zoloft), 233 (mentions only Zoloft and Wellbutrin).  None of the other doctors' notes or reports cited by the plaintiff in this regard, Itemized Statement at 10, can reasonably be interpreted to support a medical conclusion that Depakote had a significantly sedating effect on the plaintiff.

I do think that the two remaining statements by Dr. Bulucu, that "fatigue continues to be a problem . . . I think it is due to the depakote" and "[c]omplains of tiredness day time which is probably due to the depakote," Record at 206, 304, may be read to be inconsistent with the administrative law judge's conclusion that the plaintiff's testimony on this point "is not supported by treating doctor notes," *id*. at 16. If that were the only evidence on which the administrative law judge based his decision to discount the plaintiff's credibility, remand might well be indicated. However, the administrative law judge's credibility determination is based on several additional factors, only one of which is challenged by the plaintiff, including the following: "The claimant's functional activities of daily living tend to erode her credibility[,]" *id*. at 15; "The claimant's poor work record erodes her credibility[,]" *id*.; "The claimant's motivation for secondary gain tends to erode her credibility[,]" *id*. at 16; "The degree of the claimant's complaints [is] unsupported by objective observations[,]" *id*.; "The claimant's course of treatment tends to erode her credibility[,]" *id*.; and "Testing of the clamant does not support her claim[,]" *id*.[2] Each of these conclusions is supported by an explanatory paragraph in the decision. If the conclusion regarding the side effect of Depakote is excluded from this list, there is nonetheless sufficient other evidence cited to support the administrative law judge's conclusion regarding the plaintiff's credibility.

---

[2] The plaintiff attacks this statement in a footnote, asserting that it is "based on additional errors of fact." Itemized Statement at 11 n.2. She cites only one such alleged error, however, asserting that the administrative law judge's finding "that the claimant obtained a negative EEG result after the initiation of medication therapy for her seizures[,]" *id*., is "not true." I am not able to verify this statement from a review of the exhibits cited by the administrative law judge, Exhibits 13F and 14F, Record at 16, but neither can I verify the plaintiff's assertion that "[t]here has been no normal EEG test since 1990, when the claimant was 15 years old[,]" Itemized Statement at 11 n.2, from the plaintiff's only citation, to page 328 of the record, which is a report of a normal EEG but certainly does not preclude the existence of a normal EEG after 1990. In any event, the administrative law judge relies on four other facts to support the challenged statement, Record at 16; his conclusion is not invalidated by omission of the statement about EEG testing from the supporting paragraph.

10

### C. Evaluation of credibility

Finally, the plaintiff attacks the administrative law judge's use of what the latter terms her "motivation for secondary gain," Record at 16, as a reason to discount her credibility, Itemized Statement at 14-15. While I do not agree with the plaintiff's assertion that the administrative law judge categorizes her receipt of child support as "charity," *id*. at 16, there being no mention of child support in this paragraph of the opinion, I am troubled by the tone of the paragraph. Exhibit 1F, the only citation given by the administrative law judge in support of this paragraph, has nothing to do with the plaintiff's finances. Record at 135. His assertion that if the plaintiff were to receive SSI benefits, she "would be entitled to additional housing, medical, food and transportation benefits," *id*. at 16, is unsupported by any citation to authority.

Using receipt of public assistance as a basis for discounting an applicant's credibility has been rejected by several courts, over a number of years. The administrative law judge should have been aware of the precarious nature of his use of this fact. "[A] [c]laimant's motivation cannot automatically be questioned merely because she has availed herself of whatever public assistance that the state or federal government provides." *Aguiar v. Apfel*, 99 F.Supp.2d 130, 138 (D. Mass. 2000). *See also, e.g., Goldthrite v. Astrue*, 535 F.Supp.2d 329, 338 (W.D.N.Y. 2008) ("The fact that the Plaintiff was receiving other income from public assistance does not, by itself, mean that she is less credible when testifying about her pain."); *Rinker v. Chater*, 1997 WL 47791 (S.D.N.Y. Feb. 6, 1997), at *8-*9 (citing cases and concluding "I do not believe it proper for all disability claimants who receive pensions to testify with one credibility strike against them."); *Leggitt v. Sullivan*, 812 F. Supp. 1109, 1120 (D. Colo. 1992) ("The ALJ is required to be fair and impartial, and not prejudiced by a claimant's financial status (receipt of state benefits)."); *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990) ("Apparently,

because the plaintiff was not a wealthy woman, her credibility was subject to a high level of scrutiny. The ALJ, in essence, accused the plaintiff of being lazy and interested only in receiving the maximum public assistance benefits possible. This attitude is not only extremely distasteful, but it is legally insupportable.").

While I find the administrative law judge's reliance on the plaintiff's receipt of "charity" and state welfare benefits to discount her credibility "distasteful [and] legally insupportable," my rejection of that basis for his credibility finding does not require that this case be remanded to the commissioner. As I have already noted, the administrative law judge gave several reasons for his credibility determination, at least five of which have not been challenged by the plaintiff. When the "motivation for secondary gain" is disregarded as one of those reasons, as it must be, the conclusion is still adequately supported by the remaining reasons.

## Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge